Anna E. Lang, as Administratrix, Plaintiff, *v.* The New York Central Railroad Company, Defendant.

(Supreme Court, Erie Trial Term, October, 1918.)

Negligence — action for personal injuries — damages — Safety Appliance Act.

> Plaintiff's intestate was one of a crew operating a way-freight train between a point in the state of Pennsylvania and the city of Buffalo, N. Y. The crew had orders to leave a couple of cars at a certain place and to take on a loaded car at which place to the knowledge of the crew and of plaintiff's intestate was another car defective in that it had no coupling apparatus on its westerly end. In getting out the loaded car the engine went onto the siding from the westerly end, pulled out six cars including the loaded car and shunted it onto an adjoining track, placed two of the other cars they had hauled out onto a third track and then kicked the other three cars back onto the track where the crippled car stood. Plaintiff's intestate was on one of these three cars for the purpose of setting the brakes and so placing said cars on the sidings as not to come in contact with the crippled car. Though his foot was resting on the small platform at the end of the car just below the brake wheel he did not stop the three cars before they collided with the crippled car and owing to the absence of the coupler attachment and bumpers his leg was caught between cars and he died as a result of injuries received. Upon denying defendant's motion for a new trial, after a verdict for plaintiff in an action based upon an alleged violation of the Safety Appliance Act of congress, *held,* that the absence of a coupler on the loaded car was the proximate cause of the accident and that section 2 of said

statute which provides: " It shall be unlawful for any such common carrier (one engaged in interstate commerce) to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars," applied, and as the liability imposed by the statute is absolute the only question for the jury was that of damages.

The crippled car being on a siding where the evidence shows cars were daily being moved back and forth, said car must be deemed to have been in use within the meaning of said statute, while it stood on the siding.

MOTION by defendant for a new trial after a verdict for the plaintiff.

Julius A. Schreiber, for plaintiff.

Maurice C. Spratt, for defendant.

WHEELER, J.   The plaintiff's intestate was a trainman engaged in interstate commerce as one of a train crew operating a way-freight train between Erie, Penn., and the city of Buffalo, N. Y.   The cause of action is based upon an alleged violation of the act of congress known as the Safety Appliance Law.

The defendant had a car loaded with iron which had been placed on a siding at the station at Silver Creek, N. Y.   On the same track was also standing another car destined for Farnham, the next station east.   At Silver Creek this way-freight had orders to leave a couple of cars and to take on the car going to Farnham.   The car loaded with iron above referred to was defective.   The draw bar, the draft timber and the coupling apparatus on the westerly end of this car were gone.   This car had been on the siding at Silver Creek several days loaded with iron consigned to a firm at Silver Creek, waiting to be unloaded.   Its condition was known to the crew of the way-freight generally and to the plaintiff's intestate prior to the acci-

dent. In fact its crippled condition was the subject of conversations between him and the train conductor only shortly before the accident happened. In getting out the car for Farnham the engine went onto the siding from the westerly end, pulled out a string of six cars including the Farnham car, then shunted the · Farnham car onto an adjoining track, placed two· of the other cars they had hauled out onto a third track, and then kicked the other three cars back onto the track where the crippled car stood. Plaintiff's intestate was on one of these three cars for the purpose of setting the brakes and so placing them on this siding as not to come into contact with the crippled car. He evidently was at the brake on the easterly end of the easterly one of the three cars moving toward the crippled car. His foot was resting on the small platform at the end of the car just below the brake wheel. For some reason he did not stop the three cars moving on this track before the cars came into contact with the crippled car. The cars collided, and owing to the absence of the coupler attachment and bumpers on the crippled car intestate's leg was caught between the ends of the two cars and he was so injured that he died from the injuries so received.

It evidently was not the intention of any of the crew to disturb, couple onto, or move, the crippled car. The defendant contends that it is not liable for the accident; that the plaintiff, under the circumstances of the case, is not entitled to invoke the provisions of the Safety Appliance Act of congress, and that the accident was caused solely by the negligence of plaintiff's intestate in neglecting to properly brake the cars on which he was riding at the time of the accident. At the trial the court took the view that the accident was due to the failure of the defendant to comply with the federal statute, that the liability imposed was an

absolute one, and a case had been made out within the statute, and the only question remaining was for the jury to fix the amount of the damages sustained.

The jury accordingly found for the plaintiff, assessing the damages as follows: to Anna E. Lang, widow, $7,000; Raymond Lang, son, $2,500; Dorothy Lang, daughter, $4,000; John A. Lang, son, $4,500; in all, $18,000.

A motion is now made for a new trial in which the trial court is asked to review its rulings.

The defendant contends that upon the undisputed facts the plaintiff's intestate and his representative cannot invoke the provisions of the Safety Appliance statute relating to car couplers.

The Safety Appliance Act provides (§ 2): "it shall be unlawful for any such common carrier (one engaged in interstate commerce) to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

Section 5 of the act provides that the interstate commerce commission shall provide a standard height for draw-bars, "And after July first, eighteen hundred and ninety-five, no cars either loaded or unloaded, shall be used in interstate commerce which do not comply with the standard above provided for."

In October, 1910, the interstate commerce commission made an order relative to draw-bars, stating the maximum and minimum height thirty-four and one-half inches and thirty-one and one-half inches.

Section 8 of the original act provided that any employee of any such common carrier who may be injured " by any locomotive, car or train in use contrary to the provisions of this act shall not be deemed thereby to have assumed the risk thereby occasioned,

although continuing in the employment of such carrier after the unlawful. use of such locomotive, car, or train had been brought to his knowledge.''

The Federal Employers' Liability Act, which applies here, as both parties were engaged in interstate commerce, provides (§ 3): '' In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of· any statute enacted for the safety of employees contributed to the injury or death of such employee.''

Defendant's counsel contends that the discussion of the United States Supreme Court in the case of *St. Louis & San Francisco Railroad Co.* v. *Conarty,* 238 U. S. 243, lays down a rule of law interpreting the statute which releases the defendant from liability in this case.

In the *Conarty* case an employee of a railroad, not endeavoring or intending to couple a car having defective couplers, or to handle it in any way, was riding on the foot-board of an engine which collided with it, and was killed in the collision.

It was held that the employee was not in a position where the absence of a coupler and draw-bar prescribed by the Safety Appliance Act of congress operated as a breach of duty imposed by that act for his benefit; that the evil against which the coupler pro-

visions of the Safety Appliance Act are directed are those which attended the old fashioned link and pin coupler where it was necessary for men to go between the ends of cars to couple and uncouple them, and was not enacted to provide a place of safety between colliding cars. It is urged by defendant's counsel in this case that it was not intended in the switching operations carried on at the time plaintiff's intestate was killed to couple onto the crippled car, and therefore within the rule laid down in the *Conarty* case the defendant cannot be held liable. It is doubtful whether the United States Supreme Court ever intended to go as far as the expressions of the opinion in the *Conarty* case might indicate. As to the *Conarty* case we think it may be said that the United States Supreme Court in the later case of *Louisville & Nashville Railroad Co.* v. *Layton,* 243 U. S. 617, has restated the rule of law, which is to govern in these cases. The rule laid down in this later case is summarized in the headnote as follows: " Under the Federal Safety Appliance Acts carriers in Interstate Commerce are liable in damages to their employees, injured in the discharge of duty, whenever the failure to comply with those acts is the proximate cause of injury and without reference to the physical position occupied by the employee or the nature of the work upon which he is engaged at the time when the injury occurs."

In that case the court upheld a recovery where failure of couplers to work automatically in a switching operation resulted in a collision of cars, from one of which the plaintiff was thrown to his injury while preparing to release brakes. There the brakeman injured was on a standing train, which was struck by other cars kicked against it owing to the failure of a defective coupler to operate and couple onto a switching engine. Was the absence of a coupler on the stand-

ing car in this case the proximate cause of the accident to plaintiff's intestate? We think this question must be answered in the affirmative. Had there been proper couplers and bumpers on the standing car the two cars could not have come into immediate contact so as to have crushed the brakeman on the moving car. It seems to us the statute was enacted to prevent just such things happening, which every one must know are liable to happen when couplers are defective even though those moving cars intended stopping before the cars came into actual contact. That the rule laid down in the *Layton* case rather than that indicated in the *Conarty* case should prevail is emphasized by the decision of the same court in the *Gotschall Case,* 244 U. S. 66, where the intestate brakeman was proceeding along the tops of cars toward the locomotive when the train started because of the opening of a coupler on one of the cars, resulting in an automatic setting of emergency brakes and a sudden jerk which threw the brakeman off the train and under the wheels.

Holding as we did at the trial and now again upon a review of our rulings that the statute in question applies, and as the liability imposed by the statute is an absolute one (*St. Louis, Iron Mountain & Southern R. Co.* v. *Taylor,* 210 U. S. 281; *Chicago, Burlington & Quincy R. Co.* v. *United States,* 220 id. 559; *Texas & Pacific R. Co.* v. *Rigsby,* 241 id. 33; *Minneapolis & St. Louis Rd. Co.* v. *Gotschall,* 244 id. 66), we think the crippled car while it stood on the siding at Silver Creek must be deemed to have been in use within the meaning of the statute. It was there for the purpose of being unloaded, on a track where the evidence shows cars were daily being moved back and forth.

The Supreme Court of the United States has held that a carrier is not relieved from liability under the statute even where the defective car is being hauled to

the nearest available point for repairs.  *Great North-
ern R. Co.* v. *Otos,* 239 U. S. 349.

Where such is the holding it would be idle to contend,
we think, that a car placed on a switch to be unloaded
was not still in use within the meaning of the act.  The
trial court had no alternative but to instruct the jury,
as it did, that the defendant's liability had been estab-
lished and it only remained for them to assess the
damages.

It is contended the verdict is excessive.  It cer-
tainly seems large, but I am not disposed to disturb it,
especially as this case will beyond doubt be appealed.
If the Appellate Division should be of the opinion the
verdict is too large that court may reduce the amount
to such sum as it thinks right.

The defendant's motion for a new trial should be
denied.

Motion denied.